AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| United States of America | |
|---|---|
| v. | Case No. 2:23-mj-00909-DUTY |
| ANDREW ARCHIE REYES, | |
| Defendant | |

LODGED
CLERK, U.S. DISTRICT COURT
2/27/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: cd  DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
2/27/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: DL  DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 10, 2023, in the county of Ventura in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 111(a)(1), (b) | Assaulting a Federal Officer or Employee with a Deadly or Dangerous Weapon or Inflicting Bodily Injury |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Ryan Joseph Angeles, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: February 27, 2023

Judge's signature

City and state: Los Angeles, California

Hon. Rozella A. Oliver, U.S. Magistrate Judge
*Printed name and title*

AUSA: Jena MacCabe x5046

## **AFFIDAVIT**

I, Ryan Joseph Angeles, being duly sworn, declare and state as follows:

### I. **PURPOSE OF AFFIDAVIT**

1.  This affidavit is made in support of a criminal complaint and arrest warrant against ANDREW ARCHIE REYES ("REYES") for a violation of 18 U.S.C. §§ 111(a)(1), (b): Assaulting a Federal Officer or Employee with a Deadly or Dangerous Weapon or Inflicting Bodily Injury.

2.  This affidavit is also made in support of an application for a warrant to search the cellular phone of REYES (the "SUBJECT DEVICE") as described more fully in Attachment A.

3.  The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 111(a)(1), (b) (assaulting a federal officer or employee with a deadly or dangerous weapon or inflicting bodily injury) (the "Subject Offense"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and

statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5. I am a special agent with the United States Department of Homeland Security, Federal Protective Service ("FPS"). I have been in this position since August 2021. From 2014 to July 2021, I was an FPS uniformed law enforcement officer. In that position, I conducted various preliminary investigations including of assaults of federal officials and employees. I also conducted training as a defensive tactics instructor on the use of force and tactics of a law enforcement officer. As part of my official duties as a special agent, I investigate crimes against the United States that originate on U.S. government property, including assault against federal officials and employees.

6. I have completed two basic training courses at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training in the investigation of various crimes, including assault against federal officials and employees.

## III. SUMMARY OF PROBABLE CAUSE

7. On February 10, 2023, REYES forcibly assaulted and used a deadly weapon to inflict bodily injury on J.P., while he was engaged in the performance of official duties working as a protective security officer at the Ventura Social Security Administration (the "SSA") office, located at 6477 Telephone Road #1, Ventura, California 93003.

8. After refusing to wear a mask to enter the SSA office, REYES used his right closed fist to strike J.P. on the left shoulder and grabbed the expandable baton of J.P., striking him twice on the upper left thigh and twice on the left arm, causing visible bodily injury.

9. On February 13, 2023, an FPS special agent, along with another law enforcement officer, interviewed REYES at the Ventura County Sheriff's Main Jail, and he voluntarily admitted to striking J.P. with a baton.

## IV. STATEMENT OF PROBABLE CAUSE

10. Based on my review of law enforcement reports, video recordings, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. REYES Assaulted J.P.

11. On February 10, 2023, I along with another FPS special agent interviewed J.P., a protective security officer. According to J.P., earlier that day, while he was working at the Ventura SSA office, located at 6477 Telephone Road #1, Ventura, California 93003, REYES approached the entrance and refused to wear a mask in accordance with SSA policy to conduct business on the property. J.P. stated that he offered REYES a mask but that REYES refused it and yelled, "Fuck you motherfuckers" while throwing the mask back at J.P. REYES then swung at J.P. with his right closed fist numerous times and struck him on his left shoulder. J.P. stated that REYES then grabbed J.P.'s baton

3

located on his duty belt and began striking J.P. J.P. said that he sprayed REYES in the face with Oleoresin Capsicum (or OC spray), providing warning that he was going to be sprayed. According to J.P., REYES continued to strike J.P. with his baton, and J.P. was in fear for his life. J.P. stated that he then unholstered his duty weapon pointing it to the ground telling REYES to drop the baton. REYES dropped the baton and was detained in handcuffs until Ventura Police Department arrived.

12. I reviewed surveillance footage of the incident provided by the SSA and observed REYES throw punches at J.P. with his right fist eventually striking him on his left shoulder. I observed REYES grab the baton from J.P.'s duty belt, expand the length of the baton, and strike J.P. four times. The first two strikes hit the upper left thigh. Simultaneously, the footage appears to show J.P. using OC spray on REYES. The last two strikes REYES made appeared to aim for J.P.'s head and neck area. J.P. jumped backward attempting to deflect the strike causing the baton to hit his left arm.

**B.    REYES Caused Bodily Injury to J.P.**

13. I analyzed the photos taken by the Ventura Police Department and observed red and purple welts and bruising across the left forearm and left upper arm of J.P. Photos were also provided of J.P.'s left leg taken on February 13, 2023, which showed dark bruising on his thigh.

4

    **C.    J.P. Was in the Performance of His Official Duties on Federal Property**

14. On February 10, 2023, J.P. was working at the Ventura SSA office in an identifiable uniform working at the main entrance of the facility when struck by REYES with a closed fist and expandable baton. J.P. is a fully qualified protective security officer assigned to the post and first made contact with REYES as he approached federal property.

    **D.    REYES Voluntary Admitted to Assaulting J.P.**

15. On February 13, 2023, an FPS special agent along with another law enforcement officer conducted a custodial interview of REYES at the Ventura County Sheriff's Main Jail. The interview was audio and video recorded. REYES was read and understood his <u>Miranda</u> rights. REYES admitted he was at the Ventura SSA office because he thought his identity was being stolen. He admitted to having a physical altercation with J.P. and struck him twice on the leg with a baton.

16. I reviewed the Ventura Police Department Report which documented an admission by REYES to assaulting J.P. REYES was read his <u>Miranda</u> rights and understood prior to providing statements. REYES stated to a Ventura Police Department officer that he was having issues with the SSA and they did not let him inside. When asked about the physical altercation REYES replied, "He sprayed me, so I assaulted him".

17. I reviewed the Ventura Police Department body camera footage which revealed consistent information regarding REYES's

denied entry into the SSA and him clearly stating, "He sprayed me, so I assaulted him."

### V. TRAINING AND EXPERIENCE ON THE SUBJECT OFFENSE

18. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct investigations into assault, I am aware of the following:

    a. Persons who assault or injure others may send electronic communications containing threats to kill or injure others from digital devices under their physical control, such as on their person. These digital devices include, but are not limited to, cell phones.

    b. Such digital devices may also include location information, such as Global Positioning System (GPS) coordinates, placing the person at the scene of the assault or injury.

    c. Such digital devices may also include communications or calendar information about whether the person has business with a SSA office.

### VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

19. As used herein, the term "digital device" includes the SUBJECT DEVICE.

20. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

6

a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.  The absence of data on a digital device may be evidence of how the device was used, what it was used for, and

7

who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

       d.  Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

  2.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

       a.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

       b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

3.  The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

   a.  Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

   b.  In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

   c.  The person who is in possession of a device or has the device among his or her belongings is likely a user of the device.  Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that

appears to have a biometric sensor and falls within the scope of the warrant: (1) depress REYES's thumb and/or fingers on the device(s); and (2) hold the device(s) in front of REYES's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

21. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that REYES violated 18 U.S.C. §§ 111(a)(1), (b): Assaulting a Federal Officer or Employee with a Deadly or Dangerous Weapon or Inflicting Bodily Injury. There is also probable cause to believe that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  27th   day of
February, 2023

*Rozella A. Oliver* (signature)
HONORABLE ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE